**MINNESOTA MINING & MFG. CO. v. COE,**
Com'r of Patents.

No. 7390.

United States Court of Appeals for the District of Columbia.

Decided May 6, 1940.

Petition for Rehearing Denied June 14, 1940.

Henry H. Benjamin, of Washington, D. C., and William H. Abbott, of Chicago, Ill., for appellant.

William Wallace Cochran, of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The appeal is from a judgment of the District Court dismissing the complaint as to certain of plaintiff's claims in an action to authorize the Commissioner of Patents to issue a patent.[1] The trial court authorized the issuance of a patent as to two of the claims, and the Commissioner does not appeal from this ruling.

The claims relate to a "sandblast stencil." This is a sheet of material which is affixed to the surface of a stone in which letters or figures are to be cut. The stencil is cut to form the letters or figures desired. The engraver uses a gun which propels particles of sand against the surface, cutting out the design formed by the openings in the stencil and leaving the rest of the stone intact. As the trial court found, "Prime requisites of sandblast stencil sheets are that they must be sufficiently strong and resilient to withstand

[1] The action is pursuant to Rev.Stat. § 4915, 35 U.S.C. (1934) § 63, 35 U.S.C.A. § 63.

abrasion by a stream of particles under an air pressure of 100 pounds and they must be sufficiently flexible to conform to uneven stone surfaces on which they may be applied. They must be tough enough to withstand abrasion and yet must be capable of being readily and accurately cut to form a stencil aperture of an intricate design. They must adhere to the surface to be inscribed firmly enough to prevent displacement during the sandblasting operation and yet not so strongly as to injure the stone surface or cause removal of any particles of the stone surface upon removal of the stencil sheet. The adhesive of the stencil sheet must not contain ingredients which will discolor or mar the stone surface." Earlier stencils had been made of vulcanized rubber,[2] rubber reinforced by wire,[3] and a glue-glycerine ("synthetic rubber") compound.[4] The latter stencil also employed a glue-glycerine adhesive which required moistening before use. This adhesive discolored the stone and was difficult to remove.

Plaintiff's stencil is strong, resilient, flexible and easily cut. The adhesive used is "pressure-sensitive," requiring no moistening for use. It is readily removable and does not discolor the stone. The stencil is described in plaintiff's claim 38 as "sheeted material comprising a flexible mass containing as ingredients thereof bone glue siftings, rubber, whiting, solros, factice and a solvent and a normally pressure-sensitive rubber-base adhesive coating affixed to one surface thereof, said composite being inherently blasting resistant." The trial court found that this claim, together with claim 39, which specifies the proportions of ingredients used, described an invention, and authorized the Commissioner to issue a patent. Since the Commissioner has not appealed, the sole question here is whether plaintiff's other claims should have been allowed also. Claim 13 is the most specific of the rejected claims, and is fairly representative of the others: "a sheeted material comprising a rubber-rosin glue inherently blasting resistant backing having a layer of normally pressure-sensitive blasting resistant adhesive material affixed to one surface thereof."

It is contended that claim 13 and the other disputed claims are invalid on their face.[5] It will be noted that the most specific phrase in claim 13 is "rubber-rosin glue." Otherwise the claim merely describes the qualities of the stencil and its functional characteristics. It has been held that a description by function does not comply with the statutory requirement that the inventor "shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."[6] The disputed claims seek to preëmpt in the field of sand-blast stencils all "rubber compounds" or "rubber-rosin glues" of whatever composition all "inherently blasting resistant backings" and all "normally pressure-sensitive blasting resistant adhesive materials." Such abstractions as "flexibility," "toughness," "resilience," "pressure-sensitivity," "blasting resistance," or even "rubber compounds" would seem to be unpatentable.

As thus indefinitely phrased, the claims in issue have been anticipated by the prior art.[7] The qualities described in the claims

---

[2] Croskey patent 445,241.

[3] Carufel patent 1,560,407.

[4] Smith patent 1,882,526.

[5] See General Electric Co. v. Wabash Co., 1938, 304 U.S. 364, 368, 58 S.Ct. 899, 82 L.Ed. 1402.

[6] Rev.Stat. § 4888, 35 U.S.C. (1934) § 33, 35 U.S.C.A. § 33; General Electric Co. v. Wabash Co., 1938, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; Koebel v. Coe, 1939, 70 App.D.C. 261, 105 F.2d 784. The claim held to be too indefinite in the General Electric case was: "A filament for electric incandescent lamps or other devices, composed substantially of tungsten and made up mainly of a number of comparatively large grains of such size and contour as to prevent substantial sagging and offsetting during a normal or commercially useful life for such a lamp or other device." 304 U.S. at page 368, 58 S.Ct. at page 901, 82 L. Ed. 1402. The invalid claim in the Koebel case was: "a setting for diamonds consisting of a base metal alloy the principal ingredients of which are molybdenum, copper and cobalt so proportioned as to be capable of being sintered at a temperature below that of the critical point at which the desirable qualities of the diamond are adversely affected, said alloy when so sintered having the property of wetting the diamonds coupled with a lack of avidity for the carbon thereof and, when thereafter cooled, of closely adhering to it."

[7] Cf. General Electric Co. v. Wabash Co., 1938, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

514

had been in the public domain as well as in various patents. The use of rubber or rubber compounds was clearly indicated in previous patents.[8] 'A synthetic rubber compound containing glue is clearly suggested by Smith patent 1,882,526. The use of "pressure-sensitive adhesive material" is common in making stencils for painting automobiles,[9] in manufacturing insoles,[10] and elsewhere. It is also suggested in the Smith patent,[11] where the adhesive required moistening. If plaintiff has an adhesive which is patentably different, it has failed to describe that difference by referring to it as "pressure-sensitive." Insofar as plaintiff's description of the "rubber compound" is sufficiently specific to distinguish the prior art, a patent has been authorized by the lower court.

The judgment of the trial court is affirmed.

[8] See notes 2, 3 and 4 supra, and text.
[9] Drew patent 1,760,820, Reissue 19,-128.

[10] Ellis patent 1,830,428.

[11] See note 4 supra.